**COMP**
James J. Lee, Esq.
NV Bar No. 1909
LEGAL OFFICES OF JAMES J. LEE
2620 Regatta Drive #102
Las Vegas, NV  89128
james@leelitigate.com
702-664-6545
702-946-1115 (Fax)

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

MEGAN HICKS,

       Plaintiff,

                  **COMPLAINT**

MICHEAL HOYT, individually;
TESLA MOTORS, INC., DOES I
through X, and ROE
CORPORATIONS I through X,

       Defendants.

       COMES NOW, Plaintiff, MEGAN HICKS, by and through her attorney, JAMES J.

LEE, ESQ., as and for her Complaint against the Defendants and each of them states and

alleges as follows:

///

///

///

COMPLAINT - 1

1
2
3

## I. PARTIES AND JURISDICTION

1.      This action is brought to remedy Sexual Harassment, and Discrimination prohibited under Title VII in violation of the Civil Rights act of 1964 as amended, 42 U.S.C. § 2000e et seq. (Title VII) and the corresponding Nevada revised Statutes (N.R.S) §613.330.

2.      Damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C § 2000e (f) and (g) and NRS §613.330 et seq. and Nevada Common Law.

3.      Venue herein is proper in this District pursuant to §706 (f)(3) of Title VII, 42 U.S.C § 2000e- 5 (f)(3), and under NRS §613.330 et seq., and pursuant to Sections 1331 and 1343 of Title 28. This court has supplemental jurisdiction over the claims of this action arising under the laws of the State of Nevada pursuant to Section 1367 and the principles of pendent claim jurisdiction. Defendants are corporations with offices in the state of Nevada, doing business therein, and the alleged unlawful sexual harassment and discrimination, as well as the state law tortious conduct occurred within the within the State of Nevada.

## II. PARTIES

1.      Plaintiff, Megan Hicks, is a citizen of the United States, is a female and a resident of the State of Nevada.

2.      Defendant, Tesla Motors, Inc., (hereinafter "Tesla") is a foreign corporation, incorporated in the state of Delaware, with business in the State of Nevada.

3.      Defendant, Michael Hoyt, Inc., (hereinafter "Hoyt") was at all times relevant a resident of Nevada and employee of Defendant Tesla in the State of Nevada.

4.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X and ROE CORPORATIONS I through X are unknown to Plaintiff who therefore sue said Defendants by fictitious names. Plaintiff is informed and

COMPLAINT - 2

believes and therein alleges that each of the Defendants designated as DOES or ROE

CORPORATIONS is responsible in some manner for the events and happenings referred

to, and caused damages proximately to Plaintiff as therein alleged, and that Plaintiff will

ask leave of this court to amend her complaint to insert the true names and capacities of

DOES I through X and ROE CORPORATIONS I through X when the same have been

ascertained and to join such Defendants in this action.

### III. PROCEDURAL REQUIREMENTS

5.      Plaintiff filed a formal charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") complaining of the acts of sexual harassment and

discrimination alleged herein.

6.      The EEOC has issued a Right to Sue letter which is attached hereto as Exhibit 1.

7.      Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under

Title VII. Jurisdiction of the Court is proper under § 706 (f)(3) of Title VII, 42 U.S.C. §

2000e- 5 (f)(3), N.R.S. § 613.330 et. seq., and Section 1367.

### IV. ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.      On or about February 5, 2018 Plaintiff, age 25, commenced her employment at

Tesla's Gigafactory, located at Electric Ave, Sparks, as a Material Handler. The position

was a non-exempt hourly position at $15.50 per hour, and Plaintiff worked evening shifts

from 6 pm to 6 am (D shift) in outbound production. As Material Handler, Plaintiff

performed the duties customarily associated with the position.

9.      Plaintiff has an employment history of exceptional performance, attendance, and

promotions to leadership position. She began working at Tesla committed to a long-term

career there and to pursuing opportunities for advancement.

COMPLAINT - 3

10.   Plaintiff had a heart condition that could at times influence her ability to perform manual labor safely. Her employer was aware of this condition at the time of her hiring.

11.   Plaintiff was informed that the attendance policy at Tesla was that lateness or absence from work would result in a citation, four citations would result in a written warning, and five in termination. Plaintiff received only one citation in or about December of 201. She was told and had every reason to believe that absences due to illness because of her medical condition would not result in a citation, as long as she could provide a doctor's note.

12.   Plaintiff states that the company's sexual harassment policy was consistently addressed in the workplace at Tesla. Employees were encouraged to report any inappropriate behavior and regularly reminded of the company policy during initial orientation, in employee meetings, and through posters placed around the workplace. The procedure for reporting harassment was to speak to an immediate supervisor, and if that supervisor was not willing or able to take action, to speak to the next supervisor in the line of command. Employees were also given an email address to contact Human Resources, however they were not informed where the HR office was located within the factory, nor were they told that they could speak in person to HR personnel.

13.   In or about March 2018, Defendant Hoyt, who was formerly production associate, was promoted to the position of lead for Ms. Hicks' shift, in outbound. As a lead, Hoyt had the power to influence personnel decisions and performance reviews for the employees he supervised, including Ms. Hicks.

14.   About three weeks after his promotion, Defendant Hoyt began bringing up inappropriate details about his personal life with Ms. Hicks. He discussed what he and his friends liked to do

COMPLAINT - 4

while drunk, and at one point disclosed that one of his friend's had a tattoo on his genitals. Ms. Hicks felt extremely uncomfortable with these conversations, and consistently requested that they limit their conversation to work-related topics. He continued despite her requests.

15.    Hoyt began to subject Plaintiff to pervasive and unwelcome sexual harassment and advances, including but not limited to:

- Making offensive and inappropriate comments about her appearance, such as "your butt looks so big in those jeans"

- Following her while she walked and commenting on her buttocks

- Making sexual moaning noises whenever she passed him

- Following her out on smoke breaks and making verbal sexual advances

16.    Hoyt engaged in this conduct despite the fact that he was married and was aware that at the time Plaintiff was in a relationship with one of her fellow employees, whom Hoyt also supervised. At one point he said, "whenever you're single come find me, even though I'm married, I would totally hit that."

17.    Hoyt harassed Plaintiff in this manner on a daily basis. At all times Plaintiff made Hoyt aware that his advances and harassment was unwelcome.

18.     On one occasion, in or around April or May of 2018, at around 1 am, Hoyt followed Plaintiff out on one of her smoke breaks while there were no other witnesses present in the parking lot. Without warning, he grabbed her buttocks moved and grabbed her vagina. She was able to push him away, said, "you can't do that !" and ran away from him and back inside the factory.

COMPLAINT - 5

19.   Plaintiff immediately went to her supervisor John Navaros ("Navaros") and reported to him that she had just been physically assaulted by Hoyt and described the harassment that had led up to this incident.

20.    Navaros said that he was going to report the incident to HR and that she should expect an email and possibly a phone call from HR personnel regarding the actions it would undertake to investigate and remedy the situation to prevent further harassment by Hoyt.

21.   Navaros never contacted HR and Plaintiff never received follow-up of any kind and the harassment continued.

22.   Navaros informed Hoyt of Plaintiffs report of harassment and assault. As a result Hoyt retaliated against Plaintiff by intensifying his verbal harassment, and making even more frequent humiliating and offensive sexual comments, including but not limited to the following examples:

- "I want to feel what you feel like inside"
- "I'd love to choke you, I know what you like, I can tell you're a bad girl"
- "After work I'll be waiting for you outside"

23.   Whenever Plaintiff was operating the forklifts in Hoyt's proximity, he would mimic sexual moaning noises, not only humiliating her in front of other employees, but also compromising her safety and those around her.

24.   For two weeks after the sexual assault, Hoyt repeatedly told Plaintiff that he would be waiting for her in the parking lot after work. As a result, Plaintiff was terrified that this would happen and would hide in the factory for an hour after her shift ended, in fear of being attacked by Hoyt as she went to her car.

COMPLAINT - 6

25.     During this period Plaintiff suffered a transformation of her mood and personality. She went from being an outgoing and joyful person, to being in a constant state of fear and paranoia and experienced symptoms of extreme depression. She became extremely withdrawn and suffered bouts of disassociation. She would regularly break down in tears after coming home from work and would describe to her mother (whom she lived with at the time) how unsafe and helpless she felt at work, especially considering her complaints were ignored by Tesla.

25.     In or around the end of May 2018, about two weeks after she reported the assault and harassment a new supervisor, Carlos, joined Ms. Hicks' shift.

26.     During the first week that Carlos joined the team, Plaintiff was on medical leave due to her medical condition. When she returned to work, she told Carlos about the harassment, and that she did not want to work with Hoyt. Carlos said that he had, "heard about the situation" and "we're looking into it."

27.     Shortly thereafter Carlos and Navaros pulled Plaintiff aside and Carlos said, "you know Megan, we have every ability to fire you right now due to your absences, but John (Navaros) and I want to help you out." Plaintiff said that she had doctor's notes for her absences, and had given him printed copies, as well as sent scanned copies digitally via email. She feared for her job, so she stopped taking needed medical leave.

28.     About a week and a half later, Plaintiff was switched with another female employee, from outbound to inbound. Since she would no longer have to work directly under Hoyt the switch was a relief for Plaintiff. About a week after the switch, the woman who Plaintiff switched with resigned from her position. When this woman quit, she sent an email complaining about how her lead, Hoyt, had been harassing her. Plaintiff learned about her reason for resignation

COMPLAINT - 7

because this woman confided in her outside of work, knowing that they had both been victims of Hoyt's harassment. Plaintiff also heard by word of mouth that Hoyt would say to other employees he supervised, that he wouldn't stop making advances towards this female employee, because she was so attractive and "innocent."

29.     Shortly after this woman's resignation, Carlos approached Plaintiff and asked her what she thought about Hoyt. Plaintiff took this opportunity to reiterate to him that she had been sexually harassed and assaulted by him, and that she knew the other female employee had resigned because of his harassment and that Tesla needed to take immediate action.

30.     Carlos responded by saying, "we're looking into it." He then told Plaintiff that he saw potential in her, and that she could be up for a lead position. Plaintiff had worked meticulously to prove her value as an employee and was thrilled by this affirmation and the opportunity presented. From the time of her hiring, she was determined to pursue every opportunity for advancement and to establish a long-term career with Tesla. For the following week she continued to work diligently and receive positive feedback from Carlos.

31.     Then Carlos started treating Plaintiff differently. He told her that she was no longer up for the lead position, and when she asked why he said they would discuss it in private. Plaintiff was extremely devastated by this news.

32.     Soon after, on July 13, 2018 Plaintiff was on a mechanized lifting machine. She started to get a migraine, a symptom of her heart condition, and then fell off the rider. Carlos took her aside, sat her down, and told her, "You're a safety issue right now, we need to send you home." Plaintiff was assured that she would not be written up for leaving work early. Carlos also told her that if she was not feeling better the next day, she could bring him a doctor's note and she would not be written up for her absence.

COMPLAINT - 8

33.   The following sequence of events exemplify the retaliation and unlawful employment practices that Plaintiff thereafter suffered from at the hands of Tesla supervisors :

- July 13-14, 2018: Plaintiff was sent home for being a "safety liability" and went to the hospital immediately. When she did not feel better the next day, she called out and emailed a copy of her doctor's note.

- July 18, 2018: After three days off work, during which she was bed ridden, Ms. Hicks woke up and texted her supervisor that she couldn't make it to work that day, aware that she would be written up for this one absence in spite of the fact th.

- July 19, 2018: As soon as Plaintiff arrived back at work, with her doctor's note in hand, she learned that she had been written up <u>three</u> times for absences, including for the day that Carlos sent her home.

- The HR Manager Amari Henderson ("Henderson") came down to the factory floor to speak to plaintiff. This was the first time she had any interaction with HR. He asked her if she was aware of the company attendance policy and she said yes. She asked him if he was aware of her harassment complaint and her medical condition he said he was not.

- Later during her shift that day, Carlos brought her into his office. Navaros and Jennifer Cote ("Cote"), Associate Manager, were also in the room. Plaintiff asked Carlos why she had been written up when he himself assured her that she would be excused with a doctor's note. He responded, "you know Megan (Plaintiff), I have every means necessary to fire you." Navaros added, "Yeah, he can fire you right now, but he wants to help you." .

- Plaintiff immediately went to her assistant manager, Mark Stevens ("Stevens"), and told him what had just occurred. She also described in detail how her harassment complaints

COMPLAINT - 9

were never dealt with. Stevens told her dismissively that he would look into it and to get back to work.

34. Throughout this time period Plaintiff continued to be sexually harassed by Hoyt whenever she came into contact with him.

35. On or around July 20, 2018, Plaintiff sent an email to Human Resources manager Amari Henderson and cc'd assistant manager Mark Stevens, her supervisors John Navaros and Carlos, and HR. The contents of the email included a detailed description of the harassment and assault committed by Hoyt, the instances in which Ms. Hicks had sought help from three different supervisors to no avail, the retaliation she suffered because of Tesla's rejection of her excused medical leave. For all these reasons she stated that she felt she had no choice but to resign.

36. Ms. Hicks received no response to her email. During this time her symptoms of depression intensified. She began feeling suicidal. She did not eat or sleep for days at a time.

37. After about a  week, Ms. Hicks found Elon Musk's personal phone number. She sent him a text saying that she had made serious complaints about harassment in her workplace at Tesla and had received no response.

38. Two hours later, Plaintiff received a call from the HR manager Amari Henderson. While she reminded him of her charges of harassment and assault, he only responded by interrupting her and asking her if again she was aware of the attendance policy. She said yes but that her medical condition excused her absences. He replied that a medical condition would not excuse her absences. Henderson told her that they would investigate her complaints and get back to her. She told him that she wanted to be reinstated after her harassment complaints were resolved.

COMPLAINT - 10

39.   When Plaintiff tried to log in to her company email account the next day, she found that it had been blocked. She never received a response from Henderson or anyone else.

40.   As an approximate result of the above described events Plaintiff has suffered extreme economic and emotional damages.

40.    Plaintiff was not able to find comparable work and was forced to take a job working for minimum wage at 7-11 in Las Vegas.

## V.  FIRST CAUSE OF ACTION

### (Sexual Harassment)

41.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint with the same force and effect as if set forth herein.

42.   Defendants subjected Plaintiff to severe and pervasive sexual harassment Defendants Tesla and Elon Musk subjected her to a hostile work environment resulting in a change in the terms and conditions of her employment in violation of Title VII.

43.   Defendants knew or should have known of Hoyt's conduct and failed to take immediate and appropriate corrective action.

44.   This conduct was a substantial factor in causing Plaintiff severe and ongoing emotional damages including depression, anxiety, and loss of enjoyment of her life and the ability to function normally.

45.   Plaintiff is now suffering and will continue to suffer irreparable injury, mental and emotional distress, and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief.

46.   Plaintiff is therefore entitled to actual, general, and compensatory damages in an amount in excess of $75,000 dollars.

COMPLAINT - 11

## VI. SECOND CAUSE OF ACTION

### (Unlawful Discriminatory Employment Practice)

47.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 of this Complaint with the same force and effect as if set forth herein.

48.   Defendant Hoyt continuously and consistently made sexual comments, remarks, and advances towards Plaintiff, touched her in a harmful and offensive manner, sexually assaulted her, and otherwise created a hostile working environment for Plaintiff because of Plaintiff's gender. At all relevant times Plaintiff made Hoyt aware that his advances and harassment was unwelcome.

49.   Plaintiff was subjected to sexual harassment because she is a woman. Any reasonable woman in Plaintiff's circumstances would have considered the work environment to be intolerably hostile and abusive. Plaintiff did in fact consider the work environment to be hostile and abusive

50.   The facts previously set out constitute an unlawful discrimination as it is unlawful for an employer to discriminate against an employee on the basis of gender or to otherwise create a hostile work environment for women. Defendant Tesla discriminated against Plaintiff by creating and allowing a hostile work environment because of Plaintiff's gender. At all relevant times Tesla knew, or reasonably should have known of Hoyt's conduct but did nothing to protect Plaintiff. Defendant Tesla likewise condoned and ratified Hoyt's misconduct by taking no action and continuing to retain him.

51.   Plaintiff is now suffering and will continue to suffer irreparable injury including but not limited to mental and emotional distress, physical manifestations of such emotional distress, and monetary damages as a result of Defendants' discriminatory practices unless

COMPLAINT - 12

and until this Court grants relief. The harassing and discriminatory conduct described was the proximate cause and a substantial factor in causing Plaintiff's harm.

52.     Plaintiff is therefore entitled to actual, general, and compensatory damages in an amount in excess of $75,000 dollars.

53.     Defendants' acts and omissions were carried out with oppression and malice and Plaintiff demands punitive damages against each Defendant, jointly and severally, in an amount in excess of $75,000.

## VII. THIRD CAUSE OF ACTION

### (Assault & Battery)

54.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 of this Complaint with the same force and effect as if set forth herein.

55.     On multiple occasions Defendant Hoyt approached Plaintiff, made lewd and vulgar comments about certain parts of Plaintiff's body, and intended to place Plaintiff In apprehension of an offensive contact by Defendant White, with Plaintiff's person.

56.     As a result of Defendant Hoyts's acts Plaintiff was in fact placed in apprehension of an offensive contact by Defendant White with Plaintiff's person. Defendant touched, groped and grabbed Plaintiff's genitals in a rude and vulgar manner.

57.     At all times mentioned, Plaintiff found the contacts made with Plaintiff's body by Defendant Hoyt to be extremely rude, harmful, and offensive, and were not at any time consented to by Plaintiff.

58.     As a direct and proximate result of the sexual assault and battery described Plaintiff was greatly humiliated, shamed, and embarrassed. Plaintiff continues to endure mental

COMPLAINT - 13

suffering, and was, and still is nervous and distraught, all to Plaintiff's damage in a sum in the excess of $75,000.

## VIII. FOURTH CAUSE OF ACTION

### (Retaliation – 42 U.S.C. 2000e-(3)a)

59.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 61 of this Complaint with the same force and effect as if set forth herein.

60.    Plaintiff engaged in Protected Speech when she complained and reported the sexual harassment, sexual battery, and sexual assault described above.

61.    Defendant Tesla was notified by Plaintiff that she was a victim of sexual harassment and assault.

62.    Plaintiff was retaliated against by Defendants for having engaged in Protected Speech.

63.    Defendant Hoyt retaliated against Plaintiff by intensifying his harassment and intimidating Plaintiff, threatening her safety.

64.    Defendant Tesla retaliated against Plaintiff by citing Plaintiff for absences which otherwise been excused, threatening to terminate her on the pretextual basis of allegedly unexcused absences and allowing Hoyt to intensify his harassment of her.

65.    As a result of these actions, Defendants willfully, wantonly, recklessly, and maliciously violated and continues to violate the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e-16 et seq.

66.    As a result of Defendants unlawful conduct in violating Title VII's prohibition against reprisal, Plaintiff has suffered and continues to suffer damages as described herein.

COMPLAINT - 14

67.    Plaintiff is therefore entitled to actual, general, and compensatory damages in an amount in excess of $75,000 dollars.

68.    Defendants' acts and omissions were carried out with oppression and malice and Plaintiff demands punitive damages against each Defendant, jointly and severally, in an amount in excess of $75,000.

## VIII. FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

69.    Plaintiff repeats and realleges each and every allegation contained in paragraphs I through 71 of this Complaint with the same force and effect as if set forth herein.

70.    Defendant Hoyt made unlawful sexual advances, discriminated against Plaintiff based on gender, assaulted, battered, and retaliated against Plaintiff during working hours.

71.    At all times Plaintiff clearly rejected all of Defendant Hoyt's advances. Hoyt ignored Plaintiff's objections. Defendant Tesla knew or should have known about Hoyt's wrongful conduct and did nothing to protect Plaintiff, and retaliated and discriminated against Plaintiff for reporting such conduct thereby ratifying and adopting Hoyt's conduct. The actions of Defendants were outrageous, intentional, malicious, and done with reckless disregard of the fact that Defendants would certainly cause Plaintiff to suffer severe emotional distress.

72.    As a direct and proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, in the form of fear, nervousness, anxiety, worry, indignity and depression. As a further proximate result of the above-mentioned acts Plaintiffs suffered physical injury and Plaintiff is required to and did employ physicians to treat and care for her and incurred additional medical expenses and other incidental expense in an amount not

COMPLAINT - 15

yet ascertained. Plaintiff is informed and believes and therefore alleges that she will incur additional expenses

73.     As a result of Defendants' acts, Plaintiff has suffered damages in an amount in excess of $75,000.

## IX. SIXTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

74.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 77 of this Complaint with the same force and effect as if set forth herein.

75.     Defendants, and each of them, knew or should have known, that failure to exercise due care in their acts and omissions, above described, would cause Plaintiff severe emotional distress.

76.     As a proximate result of the above-mentioned, Plaintiff suffers severe emotional distress, including humiliation, mental anguish, and severe emotional distress with physical manifestations, all to Plaintiff's damages in a sum in excess $75,000.

## X. SEVENTH CAUSE OF ACTION

### (Negligent Retention of Employee)

77.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 81 of this Complaint with the same force and effect as if set forth herein.

78.     Upon information and belief, including Plaintiffs complaints to her supervisors and HR, Plaintiff's email and text message to Defendant Elon Musk, and Plaintiff's charge of sexual harassment and Plaintiff's complaint filed with the EEOC, Defendants Tesla knew

COMPLAINT - 16

or should have known Defendant Hoyts's conduct was against company policy and was in violation of Title VII of the Civil Rights Act of 1964. Defendants had knowledge, either constructive or actual, of Defendant Hoyt's sexual harassment of Plaintiff and other females in the workplace, and unlawful employment practices towards Plaintiff.

79.   Defendant Tesla had a duty of reasonable care to retain only competent qualified and safe employees.

80.   Defendant Tesla breached their duty of retention to Plaintiff by retaining Defendant Hoyt as an employee.

81.   Defendant actions in failing to exercise its duty to Plaintiff by retaining an employee who engaged in a pattern and practice of sexual assault and harassment was a proximate cause of the injuries and loss complained of by Plaintiff.

82.   Defendant Tesla's actions and omissions were willful and wanton, with complete and gross disregard for Plaintiff's employment and psychological well-being.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment:

      1.      Directing Defendants to pay compensatory damages to Plaintiff for:

            (a)      Mental and emotional distress in a sum in excess of $75,000;

            (b)      General and special damages in a sum in excess of $75,000;

            (c)      Punitive damages in a sum in excess of $75,000;

            (d)      Attorney's fees according to law;

            (e)      Costs of suit incurred herein;

            (e)      Such other and further relief as this court deems just and proper.

DEMAND FOR A TRIAL BY JURY

COMPLAINT - 17

Dated this 4h day of June, 2019.


                                    /s/James Lee
                                    James J. Lee Esq.
                                    Nevada Bar no 001909
                                    LEGAL OFFICES OF JAMES J. LEE
                                    2620 Regatta Drive #102
                                    Las Vegas, NV 89128
                                    james@kettnerlaw.com
                                    james@leelitigate.com

COMPLAINT - 18